**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Kelly Dippel, | : | Case No. 5:10-CV-72 |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM   DECISION AND ORDER** |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying her claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act) and for Supplemental Security Income (SSI) under Title XVI of the Act.  Pending are the parties' Briefs on the Merits (Docket Nos. 18 & 23).  For the reasons that follow, the Commissioner's decision is affirmed.

**I. PROCEDURAL BACKGROUND.**

On August 19, 2003, Plaintiff filed an application for DIB alleging that she became unable to work because of her disabling condition on January 15, 2003 (Tr. 78-80).  On August 18, 2004, March 31, 2005 and January 19, 2006, Plaintiff filed applications for DIB alleging that she became disabled

on either the second or fourth of August, 2002 (Tr. 66-68; 69-71; 73-75). On January 11, 2006, Plaintiff protectively filed applications for DIB and SSI (Tr. 14D). Plaintiff's requests were denied initially and upon reconsideration (Tr. 636-638; 640-642; 41-43; 46-48; 50-52; 53-55; 56-59). Plaintiff filed a timely request for hearing and on October 8, 2008, Administrative Law Judge (ALJ) Brian Kilbane held a hearing at which Plaintiff, represented by counsel, and Vocational Expert (VE) Gerald K. Wells attended and testified (Tr. 710). On November 19, 2008, ALJ Kilbane rendered an unfavorable decision denying an application for a period of disability, SSI and DIB (Tr. 14A-14Q). On November 27, 2009, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner (Tr. 7-9). Plaintiff filed a timely Complaint in this Court seeking judicial review (Docket No. 1).

## II. FACTUAL BACKGROUND.

### A.    PLAINTIFF'S TESTIMONY.

After graduating from high school, Plaintiff attended vocational school for two years. Plaintiff summarized that her employment history included being a district manager at Radio Shack, general worker at a pharmacy where she assisted with sales, cooked and served food, traffic controller or tracer of lost and missing packages for a wall covering company and data entry clerk/general office worker. From 1990 to 2000, Plaintiff managed a construction company with her husband. After 2000, Plaintiff was employed at a pizza shop making pizzas. In 2001, Plaintiff was employed at Wal-Mart. Plaintiff advanced at Wal-Mart from cashier to customer service manager. Plaintiff stopped working on August 2, 2002 when it was determined that she needed major back surgery (Tr. 716, 717).

Plaintiff underwent surgery on August 13, 2002. During 2003 to 2004, Plaintiff had several caudal epidural injections (Tr. 717, 718). Thereafter, Plaintiff was diagnosed and/or suffered with

2

persistent pain, depression, tendonitis in both hands, tendonitis in her right foot, arthritis in her neck which caused headaches and pain in her shoulders, a buildup of joint fluid behind her knee, partial drop foot, nerve damage in her left leg, no reflexes in her left ankle and paralysis on the outside of her left leg. (Tr. 718-719).

Plaintiff was prescribed a pain reliever and a transcutaneous electrical nerve stimulation unit. To supplement her pain reliever, Plaintiff took Advil®. She used a brace for her left leg and a prosthetic for her right foot to help with the tendonitis (Tr. 719, 720).

During a typical day, Plaintiff arose at or about 6:30 A.M.  With the assistance of her husband, Plaintiff took her medication and got their three children "off to school."  Plaintiff returned to bed. Plaintiff took baths and her daughter brushed her hair.  Her husband and children prepared meals. Typically, Plaintiff ate one meal daily (Tr. 721).  Plaintiff slept on the couch to relieve the pressure to her back.  Plaintiff did not drive under the influence of her medications (Tr. 722).  Plaintiff estimated that she could lift up to ten pounds (Tr. 724).

**B.     VE TESTIMONY.**

The first hypothetical question posed to the VE assumed a plaintiff who was a younger individual with a high school education, two years of college and a work history similar to Plaintiff's.  This hypothetical plaintiff had an ability to lift no more than twenty pounds occasionally, ten pounds frequently, stand and walk a total of six hours in an eight-hour workday.  Crawling and climbing ladders, ropes or scaffolds was contraindicated.  The hypothetical plaintiff could occasionally climb ramps and stairs and stoop, kneel or crouch.  The VE opined that this hypothetical plaintiff could return to Plaintiff's past relevant work of customer service manager as it was normally performed in the national economy and described in the DICTIONARY OF OCCUPATIONAL TITLES (Tr. 727, 728)

3

The ALJ proffered another hypothetical plaintiff who was the same age as Plaintiff and had the same work history but he or she was limited to lifting no more than ten pounds, was in constant pain and had difficulty walking, standing or sitting. The VE opined that he did not believe anyone could work with those limitations (Tr. 728).

### III. MEDICAL EVIDENCE.

Plaintiff commenced treatment on June 29, 2000, for depression, anxiety and history of panic attacks (Tr. 241). By September 21, 2000, Plaintiff's depression was responding well to treatment. (Tr. 238).

Plaintiff was treated for sinusitis on February 21, 2001 (Tr. 236). On October 2, 2001, Plaintiff complained of a lesion on her right hand. The lesion was punctured by a physician three weeks earlier. On October 15, 2001, Plaintiff was treated for chronic wound infection resulting from the punctured lesion. The infection appeared to be healing; however, Plaintiff was scheduled for a one week follow up (Tr. 232). On November 13, 2001 and April 12, 2002, Plaintiff underwent ultrasound treatments to decrease the pain and stiffness and reduce the muscle spasm in her back (Tr. 229, 231).

In February 2002, Plaintiff was prescribed medication designed to treat depression and anxiety (Tr. 230).

On May 20, 2002, Plaintiff was diagnosed with sciatica (Tr. 228). No bony abnormalities were present in Plaintiff's pelvis on May 22, 2002 (Tr. 209). The x-ray of Plaintiff's lumbar spine showed possible facet arthritis. There was no significant narrowing of the intervertebral disc spaces or bony abnormalities of the pelvis (Tr. 335, 336). The results of the X-rays taken of Plaintiff's left hip on May 23, 2002, were normal (Tr. 211). The views of Plaintiff's spine showed possible arthritis but no significant narrowing of disc space (Tr. 213).

4

Plaintiff was treated for acute sciatica on August 3, 2002, with a pain reliever (Tr. 333). On September 3, 2002, Plaintiff was diagnosed with a central left paracentral herniation of a disc with a moderate size at L5-S1 disc level (Tr. 217). Plaintiff underwent surgery to the spine on September 13, 2002 (Tr. 190). The purpose of the surgery was to repair disc herniation at L5-S1 (Tr. 202). "Dr. Georges" noted during the follow-up evaluation on October 14, 2002 that Plaintiff was ambulating independently and the incision appeared to be healing (Tr. 203). However, Plaintiff suffered with pain, inflammation and muscle spasm. Analgesic and anti-inflammatory modalities were employed to treat these symptoms (Tr. 204). On November 18, 2002, there were results from the magnetic resonance imaging (MRI) to the spine that showed mild desiccation, without significant bulging, of L3-4 and L4-5 (Tr. 216).

Focal disc protrusion was noted in Plaintiff's lumbar spine on March 6, 2003 (Tr. 215). Degenerative change was confirmed through the computed tomography (CT) scan of Plaintiff's lumbar spin one March 20, 2003 (Tr. 329).

On March 25, 2003, Plaintiff was diagnosed and treated for post myelogram migraine cephalgia (Tr. 327). Scarring on the surgical bed as well as slight thecal compression was identified on April 17, 2003 (Tr. 325).

On June 10, 2003, Dr. David P. Gutlove, M. D., determined that Plaintiff had epidural scarring around the S1 nerve root and post laminectomy syndrome. Straight leg raising was negative. Plaintiff exhibited a normal gait, intact reflexes and 5/5 strength in the lower extremities (Tr. 291).

Plaintiff underwent nerve blocks on July 14 and July 28, 2003 to provide relief from nerve pain in her back and left leg (Tr. 218-222).

On November 4, 2003, Dr. Arthur L. Sagone, Jr, M. D., opined that Plaintiff could occasionally

lift and/or carry up to fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk about six hours during an eight-hour workday, sit about six hours in an eight-hour workday, push and/or pull on an unlimited basis, occasionally stoop and crawl (Tr. 243-244).  There were no manipulative, visual, communicative and environmental limitations (Tr. 244, 245).

Dr. James D. Chlovechok, M. D., diagnosed Plaintiff with a meniscal tear of the left knee and a buildup of join fluid behind the knee on March 26, 2004 (Tr. 359).

On March 30, 2004, Dr. Timothy J. Cramer, M. D, interpreted the results from an MRI scan of Plaintiff's left knee as showing a defect in the cartilage covering the end of a bone of a knee joint (Tr. 360).

On April 22, 2004, Dr. Arne Melby, III, M. D., attributed the persistent knee swelling to a bone bruise (Tr. 273).

On July 13, 2004, the conduction velocity study revealed that Plaintiff has a very mild sensory motor peripheral polyneuropathy (Tr. 275).  Postoperative and degenerative changes to L5-S1 of Plaintiff's spine were present.  It was suspected that a small left paracentral disk protrusion was present on the adjacent S1 nerve root (Tr. 279).

Lumbar epidural steroid injections were administered to Plaintiff on August 9, 16 and 30, 2004 (Tr. 293, 296, 300).

On September 24, 2004, Melissa Gaffney, D.P.M., opined that Plaintiff's posterior heel pain was possibly related to the L5-S1 radiculopathy (Tr. 306).

On December 7, 2004, Plaintiff underwent a clinical evaluation after which James N. Spindler, a psychologist, diagnosed Plaintiff with chronic pain in her lower back, psychological stressors and absent or minimal symptoms (ex: mild anxiety before exams); good functioning in all areas; interested

and involved in a wide range of activities; socially effective, generally satisfied with life, no more than everyday concerns (Tr. 312).

On December 10, 2004, Dr. James Gahman, M. D., determined that Plaintiff could occasionally lift and/or carry up to twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours during an eight-hour workday and sit about six hours in an eight-hour workday.  Plaintiff could occasionally climb using a ramp or stairs, occasionally stoop, knee and crouch, but never crawl or climb using a ladder/rope/scaffold (Tr. 315, 316).  There were no manipulative, visual, communicative or environmental limitations (Tr. 317, 318).

On March 15, 2005, Plaintiff was treated for "exacerbation of chronic low back pain left sciatic" (Tr. 353).

From May 4, 2005 through August 9, 2006, Dr. Fereshte Khavari, M.D., resolved and treated several issues including status post-dog bite, abdominal pain, insomnia, nausea and pain with medication and practical solutions such as getting a new bed.  Plaintiff's pain appeared to be controlled with pain management (Tr. 374-378; 383-390; 395-400).  During the course of treatment, Dr. Khavari noted that Plaintiff was ambulating well on June 14, 2006 (Tr. 376).  She was ambulating with a cane during the August 9, 2006, visit (Tr. 374).

Results from the MRI of Plaintiff's lumbar spine administered on May 26, 2005 showed evidence of a left hemilaminectomy defect at L5-S1 (Tr. 348).

On July 28, 2005, Dr. Dimitri Teague, M. D., determined that Plaintiff could occasionally lift and/or carry up to twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours during an eight-hour workday, sit about six hours in an eight-hour workday and engage in unlimited pushing and/or pulling.  Plaintiff could occasionally climb using a ramp or stairs, occasionally

stoop, kneel and crouch, but never crawl or climb using a ladder/rope/scaffold (Tr. 338, 339). There were no manipulative, visual or communicative limitations (Tr. 340, 341).

Plaintiff presented to Dr. Chlovechok on January 23, 2006 with complaints of arm and hand pain. Dr. Chlovechok did not prescribe a pain reliever as Plaintiff was engaged in drug seeking behavior. In fact, Dr. Chlovechok vowed to refrain from prescribing any further narcotics to Plaintiff (Tr. 355).

On April 26, 2006, Dr. Esberdado Villanuva, M. D., determined that Plaintiff could occasionally lift and/or carry up to twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours during an eight-hour workday and sit about six hours in an eight-hour workday. Plaintiff could occasionally climb using a ramp or stairs, occasionally stoop, kneel and crouch, but she could never climb using a ladder/rope/scaffold (Tr. 367, 368). There were no manipulative, visual, communicative and environmental limitations (Tr. 369, 370).

On June 1, 2006, Plaintiff underwent an ultrasound of the right upper quadrant and an upper gastrointestinal series. The ultrasound showed no sonographic abnormality and the upper gastrointestinal study results were within normal limits (Tr. 379, 380).

On January 11, 2008, Plaintiff's symptoms of depression with anxiety and her allegations of weak muscles were addressed by Dr. Hugh O' Neill, M. D., who prescribed an antidepressant (Tr. 529). Over the following six months, Dr. O'Neill modified and adjusted Plaintiff's medication to control back pain, depression and assisted Plaintiff with her tobacco addiction. Ultimately Plaintiff was referred to a neurologist to address muscle weaknesses (Tr. 528-540).

The nerve conduction study administered on February 4, 2008, showed normal results (Tr. 558). The CT scan of Plaintiff's head showed no acute intracranial abnormality (Tr. 560).

The MRI of Plaintiff's lumbar spine administered on April 1, 2008 showed facet disease of the

joints at L3-L4, L4-L5 and L5-S1 with increasing severity, postoperative changes at L5-S1 and moderate left and mild to moderate right proximal bilateral stenosis at L5-S1 (Tr. 670). Plaintiff's cervical spine showed evidence of disc desiccation at C2-C3 and C3-C4 (Tr. 667).

On June 4, 2008, bilateral views of Plaintiff's hands showed no acute fracture or dislocation but moderate narrowing of the right triscaphe joints. There was also mild narrowing of the first carpometacarpal (CMC) joint (Tr. 503-508).

In July 2008, Dr. Grace Goncero commenced Plaintiff's care, addressing a "cramp in limb"; low back pain, depression with anxiety, a tobacco addiction and upper respiratory infection (Tr. 541-549). In August 2008, Dr. Goncero provided treatment for tobacco addiction, joint pain, depression and anxiety (Tr. 567, 568).

Plaintiff underwent podiatric examination and/or treatment on May 8, June 22, July 13 and August 3, 2008 to address issues related to a partial foot drop, tendonitis and bilateral callouses on her feet. The therapeutic intervention included injections and pain medications (Tr. 672, 675, 676).

### IV. STEPS TO SHOWING ENTITLEMENT TO SOCIAL SECURITY BENEFITS.

DIB and SSI are available only for those who have a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (*citing* 42 U.S.C. § 423(a), (d); See also 20 C.F.R. § 416.920)). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. (*citing* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); See also 20 C.F.R. § 416.905(a) (same definition used in the SSI context)). The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical for purposes of this case, and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. §

416.920 respectively. To assist clarity, the remainder of this decision refers only to the DIB regulations, except where otherwise necessary.

To determine disability under Sections 404.1520 and 416.920, a plaintiff must first demonstrate that he or she is not currently engaged in "substantial gainful activity" at the time her or she seeks disability benefits. *Id.* (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)).

Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. *Id.* A "severe impairment" is one which "significantly limits the claimant's physical or mental ability to do basic work activities. *Id.*

Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. *Id.*

Fourth, if the plaintiff's impairment does not prevent her from doing past relevant work, plaintiff is not disabled. *Id.*

For the fifth and final step, even if the plaintiff's impairment does prevent her from doing past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Id.* (*citing Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001)(internal citations omitted) (second alteration in original)). If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates. *Id.* (*citing* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).

## V. THE ALJ'S FINDINGS.

Upon consideration of the evidence, the ALJ made the following findings:

1.    Plaintiff met the insured status requirements of the Act through September 30, 2007. There was no evidence that Plaintiff had engaged in substantial gainful activity since

10

August 4, 2002, the alleged onset date of her impairment.

2.  Plaintiff had a severe impairment, namely, a musculoskeletal disorder.  Plaintiff's impairment did not meet or medically equal the listed impairments in 20 C. F. R. Part 404, Subpart P, Appendix 1.

3.  Plaintiff had the residual functional capacity for light work except that she could not climb ladders/ropes/scaffolds or crawl.

4.  Plaintiff was capable of performing her past relevant work of customer service representative.  This work did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.

5.  Plaintiff was not disabled under the Act from August 4, 2002, through November 18, 2008.

(Tr. 14A-14Q).

## VI.  STANDARD OF REVIEW.

Title 42 U.S.C. § 405(g) permits the district court to conduct judicial review over the final decision of the Commissioner. *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832-833 (6th Cir. 2006).  Judicial review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.  *Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003) (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Commissioner Social Security Administration*, 402 F.3d 591, 595 (6th Cir. 2005) (*citing Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir.2004) (*quoting Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997)).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007).

In deciding whether to affirm the Commissioner's decision, it is not necessary that the court agree with the Commissioner's finding, as long as it is substantially supported in the record.  *Id.* (*citing Her v. Commissioner of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999)).  The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth, supra,* 402 F. 3d at 595 (*citing Warner, supra*, 375 F.3d at 390) (*citing Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2478 (1983) (internal quotation marks omitted)).  If substantial evidence supports the Commissioner's decision, this Court will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Id.* (*citing Warner,* 375 F.3d at 390) (*quoting Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)).

## VII. DISCUSSION.

Plaintiff argues that:

1.    The ALJ improperly disregarded the opinion of Plaintiff's treating pain management physician.

2.    The ALJ improperly assessed Plaintiff's credibility.

3.    The ALJ improperly assessed Plaintiff's complaints of pain

4.    The answers to the hypothetical questions posed to the VE did not constitute substantial evidence as they did not accurately portray Plaintiff's impairments.

Defendant contends that:

1.    The ALJ did not ignore Dr. Sayegh's opinion.  Consistent with the regulations, the ALJ properly rejected the opinion.

2.    The ALJ's credibility findings are entitled to great weight.

12

3.      Plaintiff's third claim is a "nonentity" as it is totally dependent on the findings in issue one and two.

**1.      TREATING SOURCES.**

Plaintiff argues that the ALJ improperly considered the opinion of Dr. Sayegh, a treating source that stated Plaintiff was able to perform only part-time work.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. *McCombs v. Commissioner of Social Security,* 2010 WL 3860574, *6 (S. D. Ohio) (*citing* 20 C.F.R. §§ 404.1527(d), 416.927(d)). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of the claimant's impairment(s), including symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and the claimant's physical or mental restrictions." *Id.* (*citing* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). Some opinions, such as those from examining and treating physicians, are normally entitled to greater weight. *Id.* (*citing* 20 C.F.R. §§ 404.1527(d), 416.927(d)).

To qualify as a treating source, the acceptable medical source must have examined the claimant and engage in an ongoing treatment relationship with the claimant consistent with accepted medical practices. *Id.* (*citing Smith v. Commissioner of Social Security,* 482 F.3d 873, 875 (6th Cir. 2007) (*quoting* 20 C.F.R. § 404.1502)). The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances. *Cross v. Commissioner of Social Security*, 373 F. Supp.2d 724, 729 -730 (N. D. Ohio 2005). Generally, more weight is attributed to treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that

13

cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  *Id.* (*citing* 20 C.F.R. § 404.1527(d)(2)).  If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.  *Id.* (*citing* 20 C. F. R. § 404. 1527(d)(2)).

In the instant case, the ALJ acknowledged that Dr.Sayegh was a treating source.  Further, the ALJ considered Dr. Sayegh's opinions that Plaintiff was unable to work full-time (Tr. 14I).  However, the ALJ was not required to give controlling weight to the opinions of Dr. Sayegh.  Dr. Sayegh did not offer an independent diagnoses of Plaintiff's impairment or provide a detailed picture of the treatment provided.  Dr. Sayegh only monitored Plaintiff's ability to control pain through drug and physical therapy for a period of less than two months.  The ALJ did all that was required of him–he considered Dr. Sayegh's report.  The ALJ was not required to give controlling weight.  Plaintiff's first claim lacks merit.

## 2.  CREDIBILITY FINDINGS.

Plaintiff contends that the ALJ failed to properly assess Plaintiff's credibility and complaints of pain.  There is substantial evidence that the ALJ disregarded.  Plaintiff contends that this case should be remanded for a second administrative hearing for further evaluation of Plaintiff's disabling pain.

It is well established, generally, that it is for the Commissioner and his or her examiner as fact finders to pass upon the credibility of the claimant and witnesses and weigh and evaluate their testimony.  *Heston v. Commissioner of Social Security*, 245 F. 3d 528, 536 (6th Cir. 2001).  Therefore, in reviewing the ALJ's credibility determinations, the court will defer to the trier of fact, the individually optimally positioned to observe and assess witness credibility.  *Villarreal v. Secretary of Health and Human*

14

*Services*, 818 F. 2d 461, 463 (6th Cir. 1987).  Findings of credibility should be linked to substantial evidence and not based entirely on personal observations.  *Harris v. Heckler*, 756 F. 2d 431, 435 (6th Cir. 1985).

Here, the ALJ determined that Plaintiff's testimony was inconsistent with the uncontroverted medical evidence.  Consequently, he did not fully credit Plaintiff's subjective complaints.  The ALJ was able to observe Plaintiff and he points to the evidence that led him to find that Plaintiff's testimony was not totally credible.

**3.        EVALUATION OF PLAINTIFF'S PAIN**.

The corollary of Plaintiff's second argument is a claim that the ALJ improperly assessed Plaintiff's complaints of pain.

Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions which the claimant, his or her treating or non-treating source, or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account in reaching a conclusion as to whether the claimant is disabled.  *Elliott v. Commissioner of Social Security,* 2011 WL 400101, *9 (N. D. Ohio 2011) (*citing* 20 C.F. R §§ 404.1529(c)(3), 416.929(c) (3)).  Consideration will be given to all of the evidence presented, including information about the claimant's prior work record, statements about his or her symptoms, evidence submitted by the claimant's treating or non-treating source, and observations by SSA employees and other persons.  *Id.* (*citing* 20 C.F.R. §§ 404.1529(c)(3), 416. 929(c)(3)).  Factors relevant to the claimant's symptoms, such as pain, which will be considered include:

        (i)       the claimant's daily activities;
        (ii)      the location, duration, frequency, and intensity of his/her pain or other symptoms;
        (iii)     precipitating and aggravating factors;
        (iv)     the type, dosage, effectiveness, and side effects of any medication the claimant takes or

has taken to alleviate pain or other symptoms;

(v)  treatment, other than medication, claimant receives or has received for relief of his/her pain or other symptoms;

(vi)  any measures used or have used to relieve pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)  other factors concerning your functional limitations and restrictions due to pain or other symptoms.

*Id.* at * 9-10 (*citing* 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3)).

In determining the extent to which symptoms, such as pain, affect the claimant's capacity to perform basic work activities, consideration will be given to all of the available evidence, including, the claimant's statements about the intensity, persistence, and limiting effects of the symptoms and the claimant's statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether the claimant is disabled.  *Id.* at 10 (*citing* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).  The fact finder will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between the claimant's statements and the rest of the evidence, including the claimant's history, the signs and laboratory findings, and statements by your treating or non-treating source or other persons about how these symptoms affect the claimant. *Id.* (*citing* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).  The claimant's symptoms, including pain, will be determined to diminish the claimant's capacity for basic work activities to the extent that he or she alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.  *Id.* (*citing* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).

Here, the ALJ did analyze Plaintiff's complaints of pain as a symptom.  Initially, the ALJ referred to 20 C.F.R. § 416.929 and stated that he analyzed the symptoms based on the requirements of 20 C. F. R. § § 404.1529 and 416.929 (Tr. 14M).  Then the ALJ conducted a detailed review of factors relevant

16

to the claimant's symptoms, such as pain, and considered Plaintiff's daily activities; the location, duration, frequency, and intensity of her pain, her allegations of aggravating factors, the medication she took to alleviate pain and other symptoms and the attendant side effects and the pain management treatment, (Tr. 14M-14O).

Ultimately, the ALJ resolved that Plaintiff's pain was well controlled with medicines and therefore not of the intensity, persistence or severity to be disabling by itself or as a symptom of her impairments.  Consequently, the alleged pain could not arise from Plaintiff's condition, nor was it objectively established that her condition produced such pain.  Since the ALJ complied with the regulation designed to assess symptoms such as pain and the result was supported by the evidence, the Magistrate does not disturb his finding that Plaintiff's claims were not credible or reach an alternate conclusion.

4.      THE HYPOTHETICAL ANSWER.

The ALJ posed a question to the VE that included limitations of chronic pain and difficulty standing or walking.  The VE responded that this hypothetical person could not work under these limitations.  Plaintiff contends that the ALJ's failure to rely on this testimony was error.

In order for a VE's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments.  *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010) (*see Howard v. Commissioner of Social Security*, 276 F.3d 235, 239, 241 (6th Cir. 2002); *see also Webb v. Commissioner of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004) (though an ALJ need not list a claimant's medical conditions, the hypothetical should provide the vocational expert with ALJ's assessment of what the claimant "can and cannot do.")).  In order for

17

a VE's testimony in response to a hypothetical question to be substantial evidence in support of an ALJ's opinion denying benefits, the question must accurately encompass a claimant's mental or physical limitations. *Surma v. Commissioner of Social Security*, 2010 WL 3001908, *4 (N. D. Ohio 2010) (*citing Webb, supra*, 368 F.3d at 633) (holding that enumerated medical ailments are unnecessary in a hypothetical posed to a VE). The only limitations that need to be included, however, are the ones that the ALJ finds "credible." *Id.* (*See Infantado v. Astrue,* 263 Fed. Appx. 469, 477 (6th Cir. 2008) (*citing Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

The Magistrate finds that the final question posed to the VE did not accurately represent Plaintiff's limitations. The medical evidence showed that Plaintiff's pain was controlled with medication. Plaintiff reported that she walked with a cane; there was no evidence that use of an ambulatory device was medically necessary. The use of a walker was only for support and not necessarily required (Tr. 373). The ALJ was unconvinced by Plaintiff's function report and recitation of daily activities that she had difficulty walking and standing (Tr. 14O). This evidence in its entirety can be construed to show that Plaintiff's use of a cane is not a medical necessity and she has little difficulty walking or standing when, *inter alia*, providing child care, shopping, crocheting or watching television. The ALJ was not compelled to include in the hypothetical these allegations that he did not find credible.

Clearly, the ALJ applied the correct legal standards and made findings of fact supported by substantial evidence in the record. Accordingly, the Magistrate does not disturb the ALJ's decision to give little weight to the VE's answer that resulted from a hypothetical question that failed to accurately encompass Plaintiff's limitations.

## VIII. CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**


/s/ Vernelis K. Armstrong
United States Magistrate Judge


Date:   March 17, 2011